# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ABINGDON DIVISION

| | | |
|---|---|---|
| **PEGGY L. SHAZIER,** | ) | |
| Plaintiff, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| **v.** | ) | |
| | ) | |
| **SOUTHWEST VIRGINIA** | ) | |
| **REGIONAL JAIL** | ) | Civil Action No. 1:08cv00037 |
| **AUTHORITY, et al.** | ) | |
| Defendants | ) | |
| | ) | |
| | ) | **BY: PAMELA MEADE SARGENT** |
| | ) | **UNITED STATES MAGISTRATE JUDGE** |

The plaintiff, Peggy L. Shazier, brought this case against defendants Southwest Virginia Regional Jail Authority, ("SWVRJA"), and the individual defendants, individually and in their respective official capacities. Shazier seeks recovery under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*., and 42 U.S.C. § 1981 for race discrimination, the Fourteenth Amendment, 42 U.S.C. § 1983 and the Constitution of the Commonwealth of Virginia for a violation of procedural due process, and wrongful discharge in violation of the Constitution of the Commonwealth of Virginia, Virginia state law and SWVRJA's own regulations and policies. Shazier's claims stem from her employment as a cook at SWVRJA, effective April 9, 2005, and her alleged forced early retirement therefrom on April 20, 2007.

This matter is currently before the court on the defendants' Motion to Dismiss the plaintiff's Complaint for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), (Docket Item No. 4), ("Motion

Case 1:08-cv-00037-GMW-PMS   Document 20   Filed 02/17/09   Page 1 of 29   Pageid#: 72

to Dismiss"). Specifically, the defendants request dismissal of the Complaint against all defendants on Counts I, II and III. Shazier has responded to the Motion to Dismiss. (Docket Item No. 13). This court has jurisdiction in this case pursuant to 28 U.S.C. §§ 1331, 1343 and 1367. The Motion to Dismiss is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). As directed by the order of referral, the undersigned now submits the following report and recommended disposition.

## I. Facts

Shazier filed her Complaint with this court on September 19, 2008, asserting violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, the Fourteenth Amendment to the United States Constitution, 42 U.S.C. § 1983 and the Constitution of the Commonwealth of Virginia, which allegedly occurred during her employment with SWVRJA and upon her forced early retirement therefrom on April 20, 2007.

For the purpose of the court's consideration of the Motion to Dismiss, the facts, as alleged in the Complaint, will be accepted as true. Shazier, an African-American, states in her Complaint that she was hired as a full-time cook for the Abingdon Facility of SWVRJA, effective April 9, 2005. (Complaint at 6.) She alleges that during the term of her employment with SWVRJA, she was subjected to intimidating and harassing conduct by other personnel of SWVRJA, in particular, Anna Coleman, a white employee, on the sole basis of her race. (Complaint at 6.) She contends that on more than one occasion, Coleman referred to her as a "nigger." (Complaint at 6.)

-2-

She further contends that, with regard to Shazier being her supervisor, Coleman stated that she was "tired of kissing nigger butt." (Complaint at 6.) Shazier alleges that, pursuant to SWVRJA's policies and practices, she, as well as others, complained to superior officers regarding Coleman's conduct, but no meaningful action was taken by SWVRJA or its employees. (Complaint at 6-7.) She contends that the failure to redress the situation created such a hostile and intimidating working environment, that she had no choice but to take early retirement. (Complaint at 7.) Shazier claims that, but for the hostile work environment, she would not have sought early retirement, which caused her a diminution in pay and benefits. (Complaint at 7.) Shazier alleges that she has exhausted all of her administrative remedies with her filing of a complaint with the Equal Employment Opportunity Commission and receipt of a "right to sue" letter dated June 26, 2008. (Complaint at 7.) Shazier notes that all of the individual defendants are white males. (Complaint at 7.) Shazier alleges that each of the defendants have created a work environment hostile to African-Americans, in which African-Americans are discriminated against in hiring, promotions, work assignments, disciplinary and termination practices. (Complaint at 7.)

Specifically, Shazier alleges that defendant Major Matt Pilkenton, and other management-level employees, refused to take disciplinary action against Coleman, thereby acquiescing in and condoning such derogatory and humiliating conduct and verbal abuse. (Complaint at 7.) Shazier alleges that she had a vested property interest in her employment with SWVRJA through her continuous and uninterrupted employment. (Complaint at 8.) She states that she had the benefit of a salary, health insurance program, employer-paid retirement benefits through the Virginia Retirement System and the full benefit package available to full-time SWVRJA employees.

(Complaint at 8.)  Shazier claims that, absent any legal cause for termination, she had expectations of continued employment.  (Complaint at 8.)  Shazier contends that, by their actions, the defendants forced her either to take early retirement, which was not in her financial best interest, or continue to work in a hostile and racially charged work environment.  (Complaint at 8.)  Shazier alleges that the defendants willfully, knowingly and purposely conspired with the specific intent to deprive her of her rights to due process and did deny her of such.  (Complaint at 8-9.)

Shazier alleges that the defendants' conduct was to punish her and to retaliate against her due to her race and for her complaints of discriminatory treatment and/or for such other illegal or improper motives known only to the defendants.  (Complaint at 9.)  She alleges that the defendants' acts were tortious and in violation of the clear public policies of the Commonwealth of Virginia.  (Complaint at 9.)

## II.  Analysis

### Motion to Dismiss

A motion to dismiss made under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint.  In considering such a motion, the court should accept as true all well-pleaded allegations and view the complaint in the light most favorable to the plaintiff.  *See, e.g., De Sole v. United States*, 947 F.2d 1169, 1171 (4th Cir. 1991) (citing *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969)).  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

-4-

For quite some time this court has cited *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), for the proposition that in order to grant a motion to dismiss, it must appear certain that the plaintiff cannot prove any set of facts in support of her claim entitling her to relief. *See also Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999). However, the Supreme Court recently revisited the proper standard of review for a motion to dismiss and stated that the "no set of facts" language from *Conley* has "earned its retirement" and "is best forgotten" because it is an "incomplete, negative gloss on an accepted pleading standard." *Bell Atl. Corp. v. Twombly*, 550 U.S. __, 127 S. Ct. 1955, 1969 (2007).

In *Twombly*, the Supreme Court stated that "a plaintiff's obligation to provide the 'grounds' of [her] 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." 127 S. Ct. at 1964-65 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 127 S. Ct. at 1965 (citations omitted). Additionally, the Court established a "plausibility standard" in which the pleadings must allege enough to make it clear that relief is not merely conceivable but plausible. *See Twombly*, 127 S. Ct. at 1965-69.

When a 12(b)(6) motion deals with a civil rights complaint, the court should not dismiss the claim unless it appears certain that the plaintiff is not entitled to relief under any legal theory which might plausibly be suggested by the facts alleged. *See Harrison v. U.S. Postal Serv.*, 840 F.2d 1149, 1152 (4th Cir. 1988) (citations omitted). However, the court need not accept as true the legal conclusions set forth in a

-5-

plaintiff's complaint. *See Edwards*, 178 F.3d at 244. Furthermore, mere legal conclusions couched as factual allegations need not be accepted as true. *See Assa'Ad-Faltas v. Virginia*, 738 F. Supp. 982, 985 (E.D.Va. 1989) (citing *Papasan,* 478 U.S. at 286).

### 1. *Title VII and 42 U.S.C. § 1981 Claims*

#### A. *Race Discrimination Claim*

It appears to the court that Shazier has attempted to state claims under Title VII, 42 U.S.C. §§ 2000e *et seq*, and 42 U.S.C. § 1981 for race discrimination and/or hostile work environment. I first must address whether the named defendants are amenable to suit under Title VII and/or 42 U.S.C. § 1981.

The court notes that, while the employer here, SWVRJA, may be held liable under Title VII, the same is not true for the individual defendants in this case. According to 42 U.S.C. § 2000e-2(a)(1):

> It shall be an unlawful employment practice for an employer ... to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin. ...

42 U.S.C.A. § 2000e-2(a)(1) (West 2003). The term "employer" is defined as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person." 42 U.S.C.A. § 2000e(b)

(West 2003). The term "agent" is not defined. However, the court finds that the individual defendants are not liable under Title VII because they do not fall within the term "agent" as that term is contemplated by the statute.

The Fourth Circuit has unequivocally held that supervisors are not liable in their individual capacities for Title VII violations. *See Lissau v. S. Food Serv., Inc.*, 159 F.3d 177, 180 (4th Cir. 1998). In *Lissau*, the plaintiff brought a Title VII suit against her former supervisor, in his individual capacity, and her former employer, alleging that both were liable for a sexually hostile work environment created by her former supervisor. The plaintiff contended that the supervisor was an agent of the employer, thereby falling within the definition of an "employer." *See Lissau*, 159 F.3d at 180. Based upon an analysis of the language of Title VII and its remedial scheme, the Fourth Circuit found that supervisors are not liable in their individual capacities for Title VII violations. *See Lissau*, 159 F.3d at 180. Specifically, the court noted its then-recent interpretation of a similar statutory definition of the term "employer" in *Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 510 (4th Cir. 1994), an ADEA case. *See Lissau*, 159 F.3d at 180. The ADEA defines "employer" as including persons who employ 20 or more workers and "any agent of such a person." *See* 29 U.S.C.A. § 630(b) (West 2008). In *Birkbeck*, the Fourth Circuit held that the inclusion of the term "agent" did not signal a congressional desire to impose liability on individual supervisors. *See Lissau*, 159 F.3d at 180. Instead, the court held that it simply represented "an unremarkable expression of respondeat superior – that discriminatory personnel actions taken by an employer's agent may create liability for the employer." *Lissau*, 159 F.3d at 180 (quoting *Birkbeck*, 30 F.3d at 510). The court in *Birkbeck* also noted that it would make little sense to hold a single individual liable when

-7-

Congress had expressly exempted all companies employing fewer than 20 persons from the statute. *See Lissau*, 159 F.3d at 180 (citing *Birkbeck*, 30 F.3d at 510).

The *Lissau* court reasoned that "[t]he Title VII definition of employer must be read in the same fashion as the ADEA definition of employer." 159 F.3d at 180. The Fourth Circuit noted that it already had observed that Title VII is the ADEA's "closest statutory kin." *Lissau*, 159 F.3d at 180 (quoting *Birkbeck*, 30 F.3d at 510). Specifically, the *Lissau* court reasoned that because Title VII, like the ADEA, exempts small employers, "it would be incongruous to hold that Title VII does not apply to the owner of a five-person company but applies with full force to a person who supervises an identical number of employees in a larger company." 159 F.3d at 180 (citing *Birkbeck*, 30 F.3d at 510). That being the case, the *Lissau* court interpreted the inclusion of the term "agent" in Title VII's definition of employer simply to establish a limit on an employer's liability for its employees' actions. *See* 159 F.3d at 180 (citing *Birkbeck*, 30 F.3d at 510-11; *Miller v. Maxwell's Int'l, Inc.*, 991 F.2d 583, 587 (9th Cir. 1993)).

In addition to this analysis of the language of Title VII, the *Lissau* court found that the 1991 amendments to Title VII further bolstered its conclusion that individuals are not liable under the Act. Specifically, the court noted that, prior to 1991, remedies under Title VII were typically limited to back pay and equitable relief such as reinstatement that "typically are only obtainable from an employing entity, not from a mere individual." *Lissau*, 159 F.3d at 180-81 (quoting *EEOC v. AIC Sec. Investigations, Ltd.*, 55 F.3d 1276, 1281 (7th Cir. 1995)). However, in 1991 Congress added compensatory and punitive damages to the list of available remedies. *See* Civil

-8-

Rights Act of 1991, § 102, Pub. L. No. 102-166, 105 Stat. 1071, 1072-73 (codified at 42 U.S.C. § 1981a), ("CRA"). In the CRA's findings, Congress noted that "additional remedies under Federal law are needed to deter unlawful harassment and intentional discrimination in the workplace." CRA, § 2, Pub. L. No. 102-166, 105 Stat. at 1071. Congress tied the amount of available compensatory and punitive relief to the size of the employer. *See* CRA, § 102(b)(3), Pub. L. No. 102-166, 105 Stat. at 1073 (codified at 42 U.S.C. § 1981a(b)(3)). This "sliding scale of liability" does not stipulate an amount in cases where a plaintiff seeks to hold an individual supervisor liable. *See Lissau*, 159 F.3d at 181. The *Lissau* court observed that such amendments to the Act's remedial scheme suggested that Congress intended that only employers be liable for Title VII violations. *See* 159 F.3d at 180. Simply nowhere does the CRA mention individual liability as an available remedy. *See Lissau*, 159 F.3d at 181. The *Lissau* court held that to allow individual liability would improperly expand the remedial scheme crafted by Congress. *See* 159 F.3d at 181.

Lastly, the Fourth Circuit in *Lissau* noted that "every circuit that ha[d] confronted [the] issue [of whether individual supervisors are liable under Title VII] since the enactment of the CRA has rejected claims of individual liability" based on the same reasoning as it. 159 F.3d at 181. As the defendants note in their brief, the United States District Court for the Western District of Virginia has recently followed the *Lissau* holding in *Taylor v. County of Pulaski*, 2008 WL 4533977 (W.D. Va. Oct. 8, 2008).

For all of these reasons, the undersigned finds that the individual defendants are not amenable to suit under 42 U.S.C. §§ 2000e *et seq.* That being the case, I

-9-

recommend that the defendants' Motion to Dismiss be granted as to all of the individual defendants. Despite the fact that the individual defendants were sued in both their individual and official capacities, this makes no difference. The official capacity of the majority of the defendants here is their status as Board Members of SWVRJA. While the *Lissau* court dealt with supervisory liability, in the sense that the defendant was a former supervisor of the plaintiff, the reasoning applied by the Fourth Circuit would extend to such "Board Members." The *Lissau* court's reasoning, as explained above, was based on the analysis of the Act's language, as well as its remedial scheme, which, the court held, revealed that the term "agent" was used in the Act merely to denote the concept of respondeat superior. Thus, even if these Board Members were to be deemed agents, the Fourth Circuit has clearly spoken on this issue, holding that it is only employers that may be held liable under Title VII. The same reasoning would apply to all of the remaining individual defendants, who were sued in any manner other than individually and in their respective roles as supervisory employees.[1] In any event, the official capacities of the individual defendants is exactly the capacity that the *Lissau* court found insufficient to confer liability under Title VII.

For all of these reasons, I recommend that the court grant the defendants' Motion to Dismiss Count I of Shazier's Complaint as to all of the individual defendants as it relates to Title VII, 42 U.S.C. §§ 2000e *et seq*.

Title 42 U.S.C. § 1981 states as follows:

---

[1]The remaining defendant is H. Lee Noble, sued individually and as a Supervisory Employee and as Superintendent.

-10-

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C.A. § 1981(a) (West 2003). The Fourth Circuit in *Tillman v. Wheaton-Haven Recreation Ass'n, Inc.*, 517 F.2d 1141 (4th Cir. 1975), squarely answered the question of whether individual liability is allowed under 42 U.S.C. § 1981. In *Tillman*, black applicants challenged a nonprofit swimming pool association's discriminatory membership policies. *See* 517 F.2d at 1142. The plaintiffs also sued the directors of the nonprofit association under 42 U.S.C. § 1981 claiming that these individuals had established and enforced the discriminatory policies. *See Tillman*, 517 F.2d at 1142. When the directors challenged their individual liability for these acts, the Fourth Circuit held that "directors become personally liable when they intentionally cause a corporation to infringe the rights secured by 42 U.S.C.... § 1981."... *Tillman*, 517 F.2d at 1146. Other circuits have held similarly. *See Patterson v. County of Oneida, New York*, 375 F.3d 206, 226 (2d Cir. 2004) ("[A]lthough ... Title VII claims are not cognizable against individuals, individuals may be held liable under § 1981 ... for certain types of discriminatory acts, including those giving rise to a hostile work environment.") (citations omitted); *Allen v. Denver Pub. Sch. Bd.*, 928 F.2d 978, 983 (10th Cir. 1991) (an individual defendant can be held liable under § 1981 if the individual defendant was personally involved in the discriminatory conduct); *Johnson v. Chapel Hill Indep. Sch. Dist.*, 853 F.2d 375, 381 (5th Cir. 1988) ("A supervisor can be held personally liable for violations of § 1981 ... only upon proof that he intentionally discriminated against the plaintiff.")

-11-

Here, the only individual defendant that Shazier alleges facts against regarding the discriminatory conduct is Major Matt Pilkenton. In her Complaint, she alleges that Pilkenton refused to take disciplinary action against Coleman, thereby acquiescing in, and condoning, such derogatory and humiliating conduct and verbal abuse. (Complaint at 7.) She does not allege any facts to support an argument that any of the alleged discriminatory conduct was carried out by any of the other named defendants. She states only that "[t]he defendants, and each of them, have created a work place environment hostile to African-Americans, in which African-Americans are discriminated against in hiring, promotions, work assignments, disciplinary, and termination practices." (Complaint at 7.) The relevant case law, as outlined above, requires that a defendant must have intentionally caused an infringement of rights protected by 42 U.S.C. § 1981. *Tillman*, 517 F.2d at 1146. The undersigned finds that Shazier's Complaint sets forth sufficient factual allegations, for the purpose of a motion to dismiss, that Major Matt Pilkenton had the necessary involvement to make him amenable to liability under 42 U.S.C. § 1981. While the defendants argue in their brief that Pilkenton is not amenable to liability under 42 U.S.C. § 1981 because Shazier failed to allege sufficient facts regarding what knowledge he had that would have required him to take any action, the undersigned finds that, at least for purposes of a motion to dismiss for failure to state a claim, Shazier's Complaint alleges sufficient facts to survive such a motion. However, with regard to the remaining individual defendants, the court cannot make the same finding. Shazier makes nothing more than a conclusory statement that each of the defendants created a racially hostile work environment, in which African-Americans are discriminated against in hiring, promotions, work assignments, disciplinary and termination practices. Shazier does not supply the court with even one factual allegation from

-12-

which the court can even infer that any of the named individual defendants had the requisite personal involvement in the discriminatory conduct of which she complains. *See Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989) (holding that the court need not accept conclusory factual allegations devoid of any reference to actual events.)

For all of the above-stated reasons, the court recommends that Shazier's 42 U.S.C. § 1981 claim against all of the individual defendants be dismissed, except with regard to defendant Major Matt Pilkenton.

### B. Hostile Work Environment

It is well-settled law in the Fourth Circuit that in order to demonstrate a racially hostile work environment under either Title VII or 42 U.S.C. § 1981, an employee must show that she was the subject of conduct that was (1) unwelcome; (2) based on race; (3) sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and that (4) there is some basis for imposing liability on the employer. *See Honor v. Booz-Allen & Hamilton, Inc.*, 383 F.3d 180, 190 (4th Cir. 2004) (citing *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183-84 (4th Cir. 2001)). Shazier's hostile work environment claim is based solely on her allegations that Coleman, a subordinate co-worker, "[o]n more than one occasion ... referred to [her] as a 'nigger' and in regard to Shazier being [Coleman's] supervisor, stated that she was 'tired of kissing nigger butt.'" (Complaint at 6.) It is unclear from Shazier's Complaint whether she was subjected to any such conduct from other employees at SWVRJA. Specifically, her Complaint alleges that she "was subjected to intimidating

-13-

and harassing conduct *by other personnel of SWVRJA, in particular ... Coleman. ...*"
(Complaint at 6). It is unclear from this statement whether Coleman was the only
employee who engaged in such conduct, or whether other employees did so as well.
What is clear, however, is that Coleman is the only individual specifically named in
the Complaint as having done so.

Viewing the well-pleaded facts alleged in the Complaint as true, it is clear that
Coleman's conduct was unwelcome because Shazier claims that she complained to her
superiors.  It also is indisputable that the conduct was based on Shazier's race given
the racial epithets employed.  No other conclusion can be reached except that "but for
[her] race, [Shazier] would not have been the victim of the alleged discrimination."
*Causey v. Balog*, 162 F.3d 795, 801 (4th Cir. 1998); *see Hawkins v. PepsiCo, Inc.*, 203
F.3d 274, 281 (4th Cir. 2000).  All of that being said, this court must determine
whether Shazier has plead sufficient factual allegations evidencing that the conduct
was so severe or pervasive to alter the conditions of her employment and create an
abusive atmosphere, as well as whether she has plead sufficient allegations showing
a basis for imposing liability on the defendants.  Despite the defendants' argument to
the contrary, for the following reasons, I find that Shazier has done so.

The Supreme Court has held that alleged discriminatory conduct is so severe
or pervasive to alter conditions of employment and create an abusive atmosphere
"[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and
insult that is sufficiently severe or pervasive to alter the conditions of the victim's
employment and create an abusive working environment."  *Harris v. Forklift Sys.,
Inc.*, 510 U.S. 17, 21 (1993) (internal quotations and citations omitted.)  To be

-14-

actionable, the conduct must create an objectively hostile or abusive work environment, and the victim must also perceive the environment to be abusive. *See Harris*, 510 U.S. at 21-22. In order to determine whether conduct alleged by a plaintiff is sufficiently severe or pervasive to sustain a claim, the totality of the circumstances must be examined, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23. "[S]imple teasing, off-hand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal quotations and citations omitted). In this vein, this circuit in *Spriggs*, 242 F.3d at 185, quoting *Rodgers v. Western-Southern Life Ins. Co.*, 12 F.3d 668, 675 (7th Cir. 1993), stated as follows: "Far more than a 'mere offensive utterance,' the word 'nigger' is pure anathema to African Americans. 'Perhaps no single act can more quickly alter the conditions of employment and create an abusive working environment than the use of an unambiguously racial epithet such as "nigger" by a supervisor in the presence of his subordinates.'"[2] "Unlike other, more direct and discrete unlawful employment practices, hostile work environments generally result only after an accumulation of discrete instances of harassment." *Jordan v. Alternative Res. Corp.*, 458 F.3d 332, 339 (4th Cir. 2006) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002)). I find that Shazier also has made a sufficient showing that the conduct was pervasive. In *Spriggs*, the Fourth Circuit found that the plaintiff supplied sufficient evidence that the racial epithets complained of were used

---

[2]The court notes that in the case currently before it, Shazier was the supervisor, and the harassing comments were made by a subordinate.

"frequently." *See* 242 F.3d at 185. In the case at bar, as reiterated above, Shazier stated that such comments occurred on "more than one occasion." It is, therefore, unclear to the court just how frequent such conduct was. Nonetheless, the undersigned finds that, for purposes of a motion to dismiss, the plaintiff has met her burden of pleading sufficient facts to evidence adequate pervasiveness to support a hostile work environment claim. Specifically, I find that the vile nature of the racial epithets, coupled with Shazier's allegations that such conduct occurred on more than one occasion, is sufficient to withstand a motion to dismiss.

All of that being said, the only remaining factor to be considered is whether there is some basis upon which to hold the employer liable. Here, Shazier seeks to hold the employer liable for the actions of a co-worker, not a supervisor. Employers are generally presumed to be liable for hostile work environment harassment committed by supervisory employees. *See White v. BFI Waste Servs., LLC*, 375 F.3d 288, 299 (4th Cir. 2004) (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 764 (1998)). However, it has been held that an employer may be held liable under Title VII for a nonsupervisory employee's actions toward another employee where the employer either ratifies or acquiesces in the harassment by not taking appropriate corrective action when it knew or should have known of the conduct. *See McCombs v. Meijer, Inc.*, 395 F.3d 346, 353 (6th Cir. 2005); *Williams v. Waste Mgmt. of Ill.*, 361 F.3d 1021, 1029 (7th Cir. 2004); *Folkerson v. Circus Circus Enters., Inc.*, 107 F.3d 754, 755-56 (9th Cir. 1997). The Fourth Circuit has held, likewise, that "[t]he employer is liable where it had 'actual or constructive knowledge of the existence of a sexually hostile working environment and took no prompt and adequate remedial action.'" *Dennis v. County of Fairfax*, 55 F.3d 151, 155 (4th Cir. 1995) (quoting

-16-

*Swentek v. USAIR, Inc.*, 830 F.2d 552, 558 (4th Cir. 1987) (quoting *Katz v. Dole*, 709 F.2d 251, 256 (4th Cir. 1983)); *see also Paroline v. Unisys Corp.*, 879 F.2d 100, 106 (4th Cir. 1989). In *Dennis*, 55 F.3d at 155, the court held that such reasoning applied equally to claims of racial discrimination in the workplace under § 1981. Here, Shazier alleges that she and others informed "superior officers" regarding the conduct, but no meaningful action was taken by SWVRJA or its employees. While it is true that Shazier has not spelled out exactly what was told to which "superior officers," the undersigned finds that Shazier's factual allegation that she and others did, in fact, inform superior officers of Coleman's conduct, leads to the reasonable inference that her employer knew or should have known of the conduct, but took no corrective action, thereby acquiescing in the conduct. Therefore, I find that, for purposes of a 12(b)(6) motion to dismiss, Shazier has plead sufficient factual allegations evidencing that her employer may be held liable under 42 U.S.C. § 1981. Therefore, the undersigned finds that Shazier has plead sufficient facts showing that SWVRJA is vicariously liable for the actions of Coleman.

## 2. Procedural Due Process Claim

In Count II of the Complaint, Shazier alleges that the defendants deprived her of a vested property right protected by the Fourteenth Amendment to the United States Constitution, under 42 U.S.C. § 1983, pursuant to the Constitution of the Commonwealth of Virginia, and in violation of SWVRJA's own regulations and policies. Specifically, Shazier alleges that she had a vested property right in her continued and uninterrupted employment at SWVRJA, absent any legal cause for her termination. She alleges that the defendants, by their actions, gave her no recourse but to take early retirement, which was not in her best financial interest. (Complaint at 8.)

-17-

The Supreme Court in *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 576-77 (1972), held that a public employee is entitled to procedural due process protections from a governmental employer if the employee has a protected property interest. However, the Court further held that such property interests are "created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Roth*, 408 U.S. at 577. Here, Shazier does not specify what regulations and policies of SWVRJA were allegedly violated by her "forced early retirement." She contends only that she had "a salary, health insurance program, employer-paid retirement benefits through the Virginia Retirement System, and the full benefit package available to full time SWVRJA employees."

The defendants have presented, by way of defendant H. Lee Noble's affidavit, evidence that Shazier received a copy of "The Employee Guide of the Southwest Virginia Regional Jail Authority" in effect on May 16, 2005, the time at which she acknowledged receipt of the same, and which stated as follows: "Consistent with the employment-at-will relationship, you or the Authority may terminate the employment relationship at any time with or without cause." (Exhibit A to Docket Item No. 4, ("Noble Affidavit")). Because matters outside the pleadings have been submitted by the defendants and have been considered by the court, the 12(b)(6) motion to dismiss on the plaintiff's due process claim shall be treated as a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(c). *See* FED. R. CIV. P. 12(d). The parties were notified of such and allowed to provide any affidavits or other evidence

-18-

they wished the court to consider on the issue.

With regard to a motion for summary judgment, the standard for review is well-settled. The court should grant summary judgment only when the pleadings, responses to discovery and the record reveal that "there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986). A genuine issue of fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

In considering a motion for summary judgment, the court must view the facts and the reasonable inferences to be drawn from the facts in the light most favorable to the party opposing the motion. *See Anderson*, 477 U.S. at 255; *Matsushita*, 475 U.S. at 587. Therefore, in reviewing the defendants' motion for summary judgment on this issue, the court must view the facts and inferences in the light most favorable to Shazier. In order to be successful on a motion for summary judgment, a moving party "must show that there is an absence of evidence to support the non-moving party's case" or that "the evidence is so one-sided that one party must prevail as a matter of law." *Lexington-South Elkhorn Water Dist. v. City of Wilmore*, 93 F.3d 230, 233 (6th Cir. 1996). Moreover, Rule 56(c) requires a court to enter summary judgment against a nonmoving party who fails to make a showing sufficient to establish the existence of an essential element of that party's claim. *See Celotex*, 477 U.S. at 322.

Virginia courts have "strenuously adhered to the presumption of at-will

-19-

employment." *Nguyen v. CNA Corp.*, 44 F.3d 234, 237 (4th Cir. 1995). This means that "where an employment relationship or contract is for an indefinite term, either party may terminate that relationship for any reason upon reasonable notice." *Nguyen*, 44 F.3d at 237 (quoting *Graham v. Cent. Fidelity Bank*, 428 S.E.2d 916, 917 (Va. 1993)).

In the case of *Bowman v. State Bank of Keysville*, 331 S.E.2d 797 (Va. 1985), the Supreme Court of Virginia recognized for the first time a "narrow exception" to the at-will employment doctrine. This narrow exception allows at-will employees to state a claim for wrongful discharge if they can identify a public policy that was violated by the termination of their employment. *See Bowman*, 331 S.E.2d at 800. Shazier relies on *Bowman* in arguing that she had a vested interest that her employment would not be terminated for an *unlawful* reason. However, *Bowman* relates to an employee's ability to sustain a wrongful discharge claim, not to whether an employee can establish a vested property interest in continued employment for purposes of demonstrating a violation of procedural due process. Shazier has cited no case law that stands for such a proposition, and the court can find none. In fact, the Virginia Supreme Court has specifically held that a government employee who is an at-will employee has no vested property interest in her continued employment which is protected by the federal constitution. *See County of Giles v. Wines*, 546 S.E.2d 721, 725 (Va. 2001). Shazier has failed to offer any factual evidence to dispute the defendants' evidence that she was an at-will employee. Specifically, she has not offered any evidence showing that she entered into an employment contract with SWVRJA, nor has she offered any evidence of the existence of any grievance procedure in place at SWVRJA to which she was denied access. Put quite simply, there is no genuine issue as to whether Shazier was an at-will employee at SWVRJA.

-20-

That being the case, the undersigned recommends that the court grant summary judgment on this claim in favor of all of the defendants.

### 3. Common Law Wrongful Discharge Claim

In Count III of her Complaint, Shazier alleges that the defendants' conduct toward her was to punish and retaliate against her due to her race and for her complaints of discriminatory treatment and/or other illegal or improper motives. Shazier further alleges that such actions by the defendants were tortious and in violation of the clear public policies of Virginia, including, but not limited to, policies embodied in Article I, § 12 of the Constitution of the Commonwealth of Virginia, the Code of Virginia and SWVRJA's own regulations and policies. The defendants argue that Shazier cannot sustain a common law cause of action for wrongful discharge subsequent to the 1995 amendments to the Virginia Human Rights Act.

Because Shazier alleges that she was forced to resign, the court construes this claim as one for wrongful constructive discharge. In three recent companion cases from this district, Judge Williams concluded that the Virginia Supreme Court would recognize a constructive discharge cause of action. *See Johnson v. Paramont Mfg., LLC*, 2006 U.S. Dist. LEXIS 67735 (W.D. Va. Sept. 21, 2006); *Watson v. Paramont Mfg., LLC*, 2006 U.S. Dist. LEXIS 78100 (W.D. Va. Oct. 18, 2006); *Hill v. Paramont Mfg., LLC*, 2006 U.S. Dist. LEXIS 78488 (W.D. Va. Oct. 18, 2006). Even assuming that a common law claim for wrongful constructive discharge exists under the facts of this case, Shazier still cannot state a claim upon which relief may be granted for the reasons discussed below.

Case 1:08-cv-00037-GMW-PMS   Document 20   Filed 02/17/09   Page 21 of 29   Pageid#: 92

The current version of the VHRA states, in relevant part, as follows:

> It is the policy of the Commonwealth to ... [s]afeguard all individuals within the Commonwealth from unlawful discrimination because of race, color, religion, national origin, sex, pregnancy, childbirth or related medical conditions, age, marital status, or disability ... in employment. ...

VA. CODE ANN. § 2.2-3900 (2008 Repl. Vol.).  In 1995, the VHRA was amended to add, among other things, § 2.2-2639(D),[3] which states, in relevant part, as follows: "[c]auses of action based upon the public policies reflected in this article shall be exclusively limited to those actions, procedures and remedies, if any, afforded by applicable federal or state civil rights statutes or local ordinances. ..." VA. CODE ANN. § 2.2-2639(D) (2008 Repl. Vol.).  The effect of this subsection was analyzed by the Virginia Supreme Court in *Doss v. Jamco, Inc.*, 492 S.E.2d 441 (Va. 1997), and *Conner v. Nat'l Pest Control Ass'n, Inc.*, 513 S.E.2d 398 (Va. 1999).

In *Doss*, the Virginia Supreme Court concluded that this subsection plainly manifested an intent by the Virginia General Assembly to alter the common law and to limit actions based on violations of the policies reflected in the VHRA to applicable statutory causes of actions and remedies.  *See* 492 S.E.2d at 446.  That being said, the court in *Doss* held that the plaintiff could not maintain her common law cause of action based on alleged violations of policy stated in the VHRA, because allowing her to do so would circumvent and render meaningless the mandate of subsection (D) that the action for violations of such policies be "exclusively limited" to statutory causes of action.  *See* 492 S.E.2d at 446.

---

[3]At the time of the 1995 amendments, this section was codified at Virginia Code Annotated § 2.1-725(D).

In *Conner*, the plaintiff alleged that her termination constituted discrimination based on her gender and that it violated the public policy against retaliation for complaints of discrimination in employment as articulated in the VHRA *and other provisions of Virginia and federal law*. *See* 513 S.E.2d at 399. The Virginia Supreme Court held in *Conner* that the VHRA made statutory causes of action the exclusive avenues for pursuing a remedy for an alleged violation of any public policy reflected in the VHRA. *See* 513 S.E.2d at 400. Thus, the *Conner* court concluded that the Virginia General Assembly, in enacting the 1995 amendments to the VHRA, eliminated a common law cause of action for wrongful termination based on any public policy which is reflected in the VHRA, *regardless of whether the policy is articulated elsewhere*. *See* 513 S.E.2d at 400.

The Virginia Supreme Court reiterated its position on the issue in 2000 in *Mitchem v. Counts*, 523 S.E.2d 246 (Va. 2000). In *Mitchem*, the plaintiff contended, on appeal, that she was discharged from her employment because, among other things, she rejected her employer's demands that she perform sexual acts in violation of Virginia Code Annotated § 18.2-344, which prohibits fornication, and Virginia Code Annotated § 18.2-345, which prohibits lewd and lascivious cohabitation. *See* 523 S.E.2d at 249. The Court distinguished *Mitchem* from *Doss* and *Conner*, in that *Mitchem* identified public policies *not* reflected in the VHRA as the basis for the plaintiff's common law claims, while, at the same time, the conduct alleged *also* violated a public policy reflected in the VHRA. *See Mitchem*, 523 S.E.2d at 250. In accordance with its earlier decisions in *Doss* and *Conner*, the Virginia Supreme Court in *Mitchem* held that § 2.2-2639(D) abrogated only common law causes of action for wrongful termination that are based on the public policies reflected in the VHRA. *See*

-23-

523 S.E.2d at 250. The court held, however, that § 2.2-2639(D) did not prohibit a common law cause of action for wrongful termination based on the public policies against fornication and lewd and lascivious behavior, because those policies are not reflected in the VHRA. *See Mitchem*, 523 S.E.2d at 250.

In her Complaint, Shazier alleges that the defendants' actions offended the public policies contained in Article I, § 12 of the Constitution of the Commonwealth of Virginia, the Code of Virginia and SWVRJA's own regulations and policies. Article I, § 12 of the Constitution of the Commonwealth of Virginia relates to freedom of speech. The court cannot determine, from the facts before it, how Shazier could allege a violation of her right to free speech. In any event, the wrongful constructive discharge claim is not based upon any such action. Thus, this court finds Shazier's attempt to use the public policy stated in Article I, § 12 misplaced as it relates to her argument that she should be allowed to sustain a common law wrongful constructive discharge claim. Furthermore, although Shazier also directs the court to the public policies contained in the Virginia Code and SWVRJA's own regulations and policies, she does not specify to what public policies she is referring. When deciding a motion to dismiss under Rule 12(b)(6), the court need not accept as true the legal conclusions set forth in a plaintiff's complaint. *See Edwards*, 178 F.3d at 244. Furthermore, mere legal conclusions couched as factual allegations need not be accepted as true. *See Assa'Ad-Faltas*, 738 F. Supp. at 985 (citing *Papasan,* 478 U.S. at 286). Shazier alleges that she was constructively discharged to punish her and retaliate against her due to her race and her complaints of race discrimination. The prevention of race discrimination in employment is clearly within the public policies reflected within the VHRA. That being the case, Shazier cannot maintain a separate common law cause

of action for wrongful constructive discharge.

For all of the above-stated reasons, the undersigned finds that Shazier has failed to state a claim for wrongful constructive discharge upon which relief may be granted pursuant to Rule 12(b)(6). That being the case, I recommend that the court grant the defendants' Motion to Dismiss with regard to Count III of Shazier's Complaint as to all of the defendants. The court notes that the statutory cause of action created by the VHRA is not available to Shazier because it applies only to employers who employ six to 14 employees. *See* VA. CODE ANN. § 2.2-2639 (2008 Repl. Vol.). Shazier has stated in her brief in opposition to the Motion to Dismiss that SWVRJA employs more than 15 employees.

## PROPOSED FINDINGS OF FACTS AND
## CONCLUSIONS OF LAW

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. The plaintiff was forced to retire early from her position as a cook at SWVRJA on April 20, 2007;

2. Supervisory liability is not allowed under Title VII;

3. Title VII race discrimination claims may be brought against only an employer as that term is defined in the Act;

4. The phrase "and any agent of such person" as used in Title VII is nothing more than a recitation of the doctrine of respondeat superior;

5. Thus, no agent of an employer may be held liable under Title VII;

6. The plaintiff's Complaint fails to state a Title VII claim against the individual

defendants because they are all either supervisors and/or agents of the employer;

7. Supervisory liability is allowed under 42 U.S.C. § 1981 if such an individual intentionally causes an infringement of rights protected thereunder;

8. Plaintiff's allegation that defendant Major Matt Pilkenton refused to take disciplinary action against Coleman is sufficient, for purposes of a 12(b)(6) motion, to show the necessary involvement to make him amenable to suit under 42 U.S.C. § 1981;

9. Thus, plaintiff's Complaint fails to state a claim under 42 U.S.C. § 1981 against the individual defendants, with the exception of defendant Major Matt Pilkenton;

10. To demonstrate a racially hostile work environment under either Title VII or 42 U.S.C. § 1981, the plaintiff must show that she was the subject of conduct that was (1) unwelcome; (2) based on race; (3) sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere, and that (4) there is some basis for imposing liability on the employer;

11. Plaintiff has sufficiently shown that the conduct was unwelcome by alleging that she complained of it to superior officers;

12. Plaintiff has sufficiently shown that the conduct was based on her race given the unambiguously racial nature of the epithets at issue;

13. Plaintiff has sufficiently shown that the conduct was severe or pervasive given the vile nature of the racial epithets, coupled with the allegation that these incidents occurred on "more than one occasion;"

14. Plaintiff has sufficiently shown that liability should be imposed on her employer by alleging that she informed superior officers of Coleman's conduct,

-26-

but that no meaningful action was taken by SWVRJA or its employees, thereby evidencing that her employer knew or should have known of the conduct, but took no corrective action, thus, acquiescing in the conduct;

15. Thus, the plaintiff's Complaint does not fail to state a claim for racially hostile work environment under Title VII or 42 U.S.C. § 1981;

16. In order to sustain a claim for a violation of procedural due process, a plaintiff must show a vested property interest;

17. Plaintiff was an at-will employee;

18. At-will employees have no expectation in continued employment;

19. The plaintiff cannot establish a vested property interest in her continued employment;

20. Thus, summary judgment must be granted in favor of the defendants on the plaintiff's procedural due process claim;

21. The 1995 amendments to the VHRA altered the common law and limited actions based on violations of the policies reflected in the VHRA to applicable statutory causes of actions and remedies;

22. The plaintiff alleges violations of the policies set forth in Article I, § 12 of the Virginia Constitution, the Code of Virginia and SWVRJA's own regulations and policies;

23. Plaintiff's reliance of Article I, § 12 of the Constitution of the Commonwealth of Virginia is misplaced;

24. The court cannot discern to which public policies the plaintiff is referring by referencing the Code of Virginia and SWVRJA's own regulations and policies;

25. Plaintiff's wrongful constructive discharge claim is based on unlawful race discrimination, which is within the public policies reflected in the VHRA;

26. Pursuant to Virginia Code Annotated § 2.2-2639(D), plaintiff cannot maintain a common law claim for wrongful constructive discharge based on violation of public policies reflected within the VHRA;

27. Thus, the plaintiff's Complaint fails to state a common law wrongful constructive discharge claim upon which relief may be granted; and

28. Therefore, the court should dismiss Count III of the Complaint for failure to state a claim under Rule 12(b)(6) as to all of the defendants.

## RECOMMENDED DISPOSITION

Based on the above-stated reasons, I recommend that the court grant the Motion to Dismiss, (Docket Item No. 4), in part and deny it in part. In particular, I recommend that the court dismiss the portion of Count I, as it relates to Title VII, as to all of the defendants except SWVRJA, pursuant to Rule 12(b)(6). I recommend that the court dismiss the portion of Count I, as it relates to 42 U.S.C. § 1981, as to all of the individual defendants except defendant Major Matt Pilkenton, pursuant to Rule 12(b)(6). I recommend that the court grant summary judgment in favor of all the defendants on Count II, and I recommend that the court dismiss Count III as to all of the defendants pursuant to Rule 12(b)(6).

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

Within ten days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed finding or recommendation to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence to recommit the matter to the magistrate judge with instructions.

Failure to file written objection to these proposed findings and recommendations within 10 days could waive appellate review. At the conclusion of the 10-day period, the Clerk is directed to transmit the record in this matter to the Honorable Glen M. Williams, Senior United States District Judge.

The Clerk is directed to send copies of this Report and Recommendation to all counsel of record.

DATED: This 17th day of February 2009.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE

-29-